MILLER, Judge pro tem.
Joseph J. Gaudin died on February 12, 1956, leaving an olographic will dated “9/12/55”. The proponent of the will is Miss Bobbye Clements, a niece of decedent, who was made universal legatee under the testament. The opponent is decedent’s brother, Albert G. Gaudin, Sr., who contends that the will bears an uncertain date and thus is null under the provisions of Louisiana Civil Code Article 1588.
This court, for the second time, is called upon to consider the certainty of the date “9/12/55”. Initially the trial court, upon objection by opponent, refused to admit extrinsic evidence to determine whether or not the will was in fact dated September 12, 1955, as contended by proponent. Accordingly, the trial court, upon concluding that the date on the face of the will was uncertain, declined to probate the instrument. From this judgment proponent appealed to the Supreme Court of Louisiana, which court in 233 La. 235, 96 So.2d 500, transferred the case to the Court of Appeal, First Circuit. This court, in Succession of Gaudin, 98 So.2d 711, reversed the judgment of the trial court and remanded the case to permit introduction of extrinsic evidence for the purpose of proving, if possible, the month and day of the will with certainty. Following this judgment remanding the case, application for writs was *385 made to the Supreme Court, which application was denied with two Justices dissenting.
On remand of the case to the trial court, over objection of counsel for opponent, the trial judge permitted counsel for proponent to introduce extrinsic evidence for the purpose of proving the certainty of the date. Following a hearing the trial court dismissed the opposition and sustained the position of proponent, holding that the will was dated September 12, 1955, and ordering it probated as the last will of decedent. Opponent has appealed from this judgment and the matter is now before this court. There are two issues to be resolved (1) Is extrinsic evidence admissible to prove the certainty of the date of an olographic will, and (2) If this evidence is admissible, has this date been proved with certainty.
We state at the outset that we are in complete agreement with our prior decision in this case to the effect that extrinsic evidence is admissible to prove the certainty of the date of an olographic will. However, inasmuch as this question is of paramount importance and counsel for both sides concern themselves almost exclusively with this issue in briefs and arguments, we are compelled to discuss this problem in detail.
In meeting the argument that extrinsic evidence is not admissible, we would be less than frank if we did not hold that the weight of jurisprudence tends to favor this position, — that is, that such evidence is not admissible. A landmark case in this respect is that of Heffner et al. v. Heffner, 48 La. Ann. 1088, 20 So. 281 (1896). This case deals with the probate of an olographic will which was dated as follows: “This-day of June, 1893”. In refusing to probate this will where the day of the month was entirely omitted, the court had this to say:
“That the olographic will must be entirely written, dated, and signed by the testator necessarily excludes proof aliunde of the essentials. The only evidence is the will itself. The testimony tendered to supply the deficiency in the will was properly excluded by the lower court.”
A distinction can be made between the Heffner case and the instant one, inasmuch as the Heffner case involved a missing date whereas the Gaudin case involves an uncertain date which can be made certain and which was not missing from the face of the will.
Without question, the Succession of Beird, 145 La. 756, 82 So. 881, 6 A.L.R. 1452 (1919), is the principal authority advanced by opponents to show that a slash date (“9/8/18”) is uncertain and hence violative of the written, dated and signed requirements of LSA-C.C. art. 1588. In this case the Supreme Court concluded that the month and day as well as the century were uncertain. The court stated that the fundamental weakness in opponent’s contention is that the court is called upon to supply from sources outside of the will something that does not appear on its face. Its decision was wrapped up with this reasoning:
“However, we have uniformly applied the rule of strict interpretation to wills, and to be valid, in the language of the Code, they ‘must be entirely written, dated and signed in the hand of the testator.’ It is hardly necessary to mention the reasons for this strictness, especially as to date, considering, as we must, that a person has the right to make as many wills as he chooses, and that the last, under the law, at least insofar as it may conflict with prior ones, has the effect of revoking their dispositions. The date, therefore, must be certain and beyond speculation. Tested by this rule, the document assailed here fails to meet the requirements of the law.”
We make no attempt to go into any hairsplitting distinctions in the Beird case, as such distinctions would serve no useful purpose, inasmuch as this issue was by and large squarely met and decided adversely *386 to the proponent of the will. We point out that the present Supreme Court was likewise confronted with this question in this very same case (Succession of Gaudin, 98 So.2d 711) and by denying writs refused to review this court’s decision that extrinsic evidence is admissible to prove the certainty of the date of an olographic will.
Citing the Beird case as authority, this court held in Succession of Lasseigne, 181 So. 879 (1938), that the date “12.10.1934” was uncertain and hence the olographic will was invalid. We went on to say that evidence aliunde the will cannot be admitted to prove a correct date or to interpret the date. We also pointed out that the Kron case, infra, which held that the century given in two figures was certain because the law presumes no man lives more than 100 years, did not reverse the Beird decision but merely modified it as to the certainty of the century, otherwise affirming it as to the uncertainty of month and day. Furthermore, we rejected the trial court’s reasoning that the custom of sometimes putting day, month and year had changed, holding that it was unlikely custom could change in so short a time (from 1919 to 1934), and we found that there was no such change. We cannot help but note that in 32 Tulane Law Review 334 in a comment on our decision in the Lasseigne case and in particular the question of custom, the writer stated that our language suggested that “a different result may be reached if the same case would arise today, since it has now become sufficiently settled in Louisiana that the digits before the first virgule represents the month”. We are constrained to agree with the observation by this writer and moreover we acknowledge that our present decision is inconsistent with our decision in Succession of Lasseigne. We do not choose to compound our error in' the Lasseigne case by a like holding in the instant case.
In the Succession of Mutin, 232 La. 416, 94 So.2d 420, (1957), the Supreme Court held that the date “Feb. 2/9/54” was a certain date on the face of the will. In so holding however, the court went on to say that when a date is uncertain the will is a nullity for a vice of form and extrinsic evidence is not admissible to show what date the testator intended. Since the court concluded that the date was certain without considering the extrinsic evidence, the ruling that extrinsic evidence was inadmissible was not necessary for the disposition of the case.
The two principal cases relied upon by proponents of the will are Succession of Lefort, 139 La. 51, 71 So. 215 (1916), and Succession of Kron, 172 La. 666, 135 So. 19 (1931).
The Succession of Lefort involved among other things, the question of whether or not the date of a will was 1913 or 1908. The question was a crucial one inasmuch as the testator had made a will in 1909. The date on the will was as follows: “Franklin May 26 19 -1913”. Following the first “19” were the figures “13” which appeared to have been written over by the figures “08”. Over objection by opponents, proponents produced testimony by a handwriting expert to show that the figures “13” were made by the testator and the figures “08” by the hand of another.
The reasoning of the Supreme Court in the Lefort case contains a penetrating analysis of the question of admissibility of proof aliunde the will to prove the certainty of its date. The opponents of the probate of the will point up the question and the court answers it:
“ ‘Must the olographic testament speak for itself and express its date with certainty and precision upon its face, or may an uncertainty or doubt as to the date, appearing on the face of the instrument, be removed by testimony as to when the document was or must have been written? ’
“We are all agreed upon the proposition that an uncertain date is equivalent to no date, and that a document with no date, or with an uncertain date, *387 cannot be a valid will. But the question at once arises, What is an uncertain date?
“There is a physical difference between a document without a date and one with an uncertain date. There is a legal difference between supplying a missing date, or any part of it, by facts outside of the will, and establishing certainty concerning an ambiguity or uncertainty or doubt in an existing date. The former cannot be done, because it is of the essence of the validity of a will that it be dated ‘by the hand of the testator’ (C.C.1588 [1581]), and it cannot be “dated” in any other way. But there is no law that prevents the courts from hearing testimony and entertaining evidence to throw light upon an obscure date, and remove all doubt, uncertainty, or ambiguity concerning it. Reason dictates it, and justice demands it, in order that the right accorded by law to make a will shall be protected, and not defeated by technicalities. Any evidence, recognized by law and not expressly prohibited by statute, calculated to convince the court and establish the certainty of the date, should be admitted and heard. The whole question resolves itself into a matter of proof. If the uncertain date can be made certain by other parts of the will or by any other means, it ceases to be uncertain and becomes certain and valid. “Id certum est quod certum reddi potest.’ If the evidence fails in its object, and the date remains uncertain, then the document wants the requisites of the law, and it is not a will. An uncertain date is therefore a date which cannot be made certain. The Code provides (C.C.1714 [1707] to 1716 [1709]) that in case of an ambiguity or obscurity in the description of a legatee, or in the intention of the testator, or in the object bequeathed, testimony shall be heard to remove the ambiguity and establish certainty in the name of the legatee, the thing bequeathed, or the intention, in order that the will of the deceased shall be executed. Why should not an uncertainty in the date of a will be corrected by the same reason and by the same evidence? We believe that such a course is authorized by the opinions in the Successions of Mc-Donogh, 18 La.Ann. 419, and Gaines, 38 La.Ann. 123, and other authorities quoted in our original opinion. Those decisions submit all wills attacked for nullity to all such proof as prevail in all contested facts or cases. It is an elementary rule of evidence that a writing in which there is no ambiguity cannot be interpreted by parol; but that an ambiguity in any of its parts, as to names, identity of parties, meaning of words, quantity, extent, or nature of thing sold or leased, consideration, value, may be removed by any evidence known to the law. 1 H.D. vo. Evidence, XV (3).”
The court goes on to say that the French authorities agree that “an uncertain date, like ambiguities in dispositions may be corrected or made certain by other parts of the will, or by recitations and circumstances appearing upon the face of the will, which may be 'corroborated by other facts and circumstances outside the will”. The following pertinent French authorities demonstrate this logic:
“We read in 10 Baudry, p. 61, Sec. 1957:
“ ‘Whenever the material conditions of the testament or its declaration furnish elements sufficient to rectify or complete the date that is upon it, courts may fortify and corroborate them by facts or documents taken outside of the will.’
“2 Fuzier-Herman, No. 279:
“ ‘Thus, in case there is doubt concerning the true date of an olographic will, the judges may, in order to determine the date, take into consideration documents taken outside of the testament itself; such, for example, as an *388 act of superscription written upon the envelope of the will, although such an act is foreign to the legal form of olographic testaments.’
“In 16 Dalloz Rep. de. Leg. p. 760, No. 2664, we read:
“ ‘We shall see further on (Nos. 2682 et seq.) what courts can do to rectify a false date. If instead of a false date, the case is one of a doubtful date, for instance by reason of the bad handwriting of the testator, the judges should be guided first by an examination of the act by itself, by invoking in case of necessity, the experience of experts. They are not forbidden to add to this verification the assistance of the external circumstances which might 'assist them to fix the veritable date.’ ”
The problems in the Lefort case were not unlike those in this case.
“In line with all these authorities we consulted and examined the will before us. We noticed the lines drawn across the paper upon which it was written which a witness swore had been drawn by her subsequent to 1908; we gave due weight to the date “1913,” written by the testatrix upon the envelope containing her will; we read the enunciations contained in the will itself and the testimony corroborating them; we studied the figures composing the dates, and the testimony of the expert in relation thereto, and then formed our own conclusions in accordance with what we believed was the law and the evidence in the case.”
In Succession of Kron, supra, the Supreme Court held that the date “January 11/27” was a legal and certain date on an olographic will. The court reasoned that since the law presumes a person dead after 100 years (LSA-C.C. art. 70) then it is likewise presumed that he was born less than 100 years before he died. It therefore follows that the will was dated in 1927 rather than 1827.
There are a number of cases in our jurisprudence which indicate that the rule of strict interpretation of wills has been relaxed in certain cases which present comparable situations.
In Succession of Clark, 11 La.Ann. 124 (18S6) the court admitted to probate a lost or destroyed will of Daniel Clark, which will was written in 1813 in spite of the fact that there was in existence an olographic will written in 1811. The court admitted parol evidence to prove this missing will and in doing so quoted from the reasoning of Judge Porter in a similar case entitled Thomas et al. v. Thomas, 2 La. 166:
“There is nothing in a will being required to be made in a particular form, which makes it an exception to this great law of necessity. It may increase the difficulty of proof but furnishes no reason to refuse hearing it. The Court in this case had proof before them, which much diminished the danger of parol evidence.”
In Succession of O’Brien, 168 La. 303, 121 So. 874, (1929) the Supreme Court upheld the probate of a typewritten copy of an olographic will, the original of which had been delivered to the testatrix a few hours before her death. In a similar case in Succession of Nunley, 224 La. 251, 69 So.2d 33 (1953), the court admitted to probate the attorney’s typewritten copy of an olographic will which was lost by the testatrix prior to her demise. The court allowed the introduction of evidence to rebut the presumption that the lost will was presumed destroyed. It may appear too obvious to bear mentioning but these decisions permitted extrinsic evidence to supply not only the date, but moreover the entire “written, dated and signed” requirements of LSA-C.C. art. 1588.
In Picard v. Succession of Picard, 179 La. 746, 155 So. 11 (1934), the Supreme Court upheld an olographic will with a beginning date of “July 18, 1932” and ending with a date “18th day of August 1932”. The court held that LSA-C.C. art. 1588 does *389 not require the testator to finish the will at one sitting or even one day. It also cited Article 970 of the Code Napoleon which it said was similar to Article 1588. The court did hold that in interpreting a will the intention of the testator should be sought and the will should be interpreted so as to give it validity, if possible. (LSA-C.C. art. 1712). Furthermore, the court cited the Succession of Cunningham, 142 La. 701, 77 So. 506, 510, which held valid a testament that began with the date “May 13, 1914” and ended with “5th day of February 1915”.
In Love v. Dawkins, 222 La. 259, 62 So. 2d 399 (1952), the will began with the date “August 31, 1946”, and ended “30th day of August 1946” and the court upheld it saying that the signature applied to both dates.
So often in the resolution of a difficult problem we lose ourselves in a maze of modifying and even conflicting opinions on a particular point. We become enmeshed in our own web of legalisms and frequently the only respite is a return to the Codal Articles in an attempt to get a new or at least a fresh approach. Seldom is this return without reward and the instant case is no exception. Article 1588 is quoted as follows:
“The olographic testament is that which is written by the testator himself.
“In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the state.”
Looking strictly at this Codal Article, can it be stated that this will which contained the date “9/12/55” was not “dated” in the sense that this article intended? We think not. The method used was the method employed by the testator in the transaction of his ordinary affairs and moreover it is a method which enjoys common acceptance, particularly in business circles. The sequence “month, day and year” is the most common sequence used in this country. We might also reiterate we find that if this sequence was not the customary one used at the time of the Beird and Lasseigne decisions (1919 and 1934) it certainly is the common custom today as is indicated by the writer in 32 Tulane Law Review 334.
The primary advantage of the olographic will is its simplicity and strangely enough because of this simplicity it is also one of the most foolproof methods of confecting a will. Its simplicity is such that the testator can make this will at any time or at any place and without outside assistance in the form of witnesses or even counsel. Thus the “written, dated, signed” requirement should be understood in ordinary terms. If we inject technicalities into these simple requirements, then we rob the olo-graphic will of its principal asset — simplicity. Are we to defeat the sacred intent of the late Mr. Gaudin simply because he used the method of dating which he had always used and which was a completely acceptable and common method? Furthermore, must we allow fate such a heavy hand because this will was confected on September 12th rather than September 9th (i. e. 9/9/55), or any other day in September subsequent to the 12th ?
Article 1588 does not demand that the date be written by a particular method. That there must be certainty is understandable and right. But since this special requirement of certainty is not, as such, specifically demanded in LSA-C.C. art. 1588, any judicial criteria on this point should be made in the light of Articles 1713 and 1715, concerning the intent of the testator:
“Article 1713. A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.”
“Article 1715. When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.”
*390 The intent here has to do with the method the testator customarily employed in dating papers. Resort to competent proof is necessary and authorized under LSA-C.C. art. 1715, which says that where the testator’s intention cannot be ascertained, “recourse must be had to all circumstances which may aid in the discovery of his intention.” (Emphasis added)
The requirement that the date be certain is based upon the necessity for showing that this was an “act of last will” (LSA-C.C. art. 1571) of the testator. There are several reasons for this, some of which are these: (1) The capacity of the testator on the date the will was made (LSA-C.C. art. 1475); (2) The birth of a child subsequent to the date of the will (LSA-C.C. art. 1705); (3) Language of the will referring to a bequest of property owned on the date of the will but not on the date of death and (4) If there be more than one will it is necessary to determine the last and controlling will. None of these four considerations are present here, nor are any others which would in any way trample the rights of potential heirs as directed by the testator’s intention, or in any other manner violate the principles of justice and fair play.
It would he easy for us to uphold the validity of this will based upon the practical considerations that no injustice could result in this particular case, because of the non-existence of any of these considerations (incapacity, etc.) previously mentioned. Although we believe the result would be right and justice would prevail in this case, if we were to base our decision solely on the ground that in this case it matters not whether the date be Sept. 12 or 9 December, we would settle nothing and simply add to the confusion. Decisions based upon this consideration alone make bad law. Quite the contrary, we believe the decision to admit extrinsic evidence is even more important where one or more of these considerations is present, if we are to be guided by the over-all principle of the Code that testaments, and thus their validity, are favored under our law. For example, if the late Mr. Gaudin had made a will dated “8/31/55” it would be obvious that the date was August 31, 1955, and thus (assuming that all other requirements are met) the will would be valid. Subsequently Mr. Gaudin would have made the instant will dated “9/12/55” which date would be either September 12, 1955, or December 9, 1955, but in either case would be subsequent to August 31, 1955, and hence under our law and the intention of the testator, would be the controlling will. However, if the latest will dated “9/12/55” were held to be invalid, then the earlier will of August 31, 1955, would be controlling and thus frustrate both the law and the intention of the testator. Such a gross injustice is not required by the Civil Code. This hypothesis is not a farfetched one but rather is easily foreseeable. Moreover, similar practical examples could be made by the score.
Is a date less certain when extrinsic evidence is introduced to show the testator’s customary way of writing a date and hence his intended date, than where extrinsic evidence in the form of handwriting experts is introduced to show the intended date where there is a surcharge or superimposition? We think not. Counsel for opponents argue that there is a difference between a date that is not legible (surcharge or superimposition) where handwriting experts can make the date certain and a case where the date itself is uncertain. Perhaps there is a difference which could be a subject for academic or abstract debate, but we are not here to determine abstract concepts. We must determine a realistic conflict and the rule of reason and common sense serves the best.
Our courts have admitted to probate typewritten copies of olographic wills which were lost and thus presumed destroyed. See Successions of O’Brien and Nunley, supra. Louisiana jurisprudence has held an undated olographic codicil to be valid if it has the appearance of having been written at the same time as the will itself. La- *391 grave v. Merle, 5 La.Ann. 278 (1850). See also Succession of Ledet, 170 La. 449, 128 So. 273 (1930). Our courts have admitted to probate wills which contained one date at the beginning and another at the end even when the date at the beginning of the will was later in time than the date given at the conclusion of the will. Love v. Dawkins, supra. Nor is a last will invalid because the date thereof was not written at the same time the will was written. Succession of Jones, La.App., 38 So. 2d 797, 799. These interpretations the courts have approved and yet when an olo-graphic will dated in a commonly accepted “slash” method of month, day, and year appears, are we to resurrect the rule of strict interpretation and certainty of date and strike down a perfectly good testament meeting all of the requirements of LSA-C.C. art. 1588? We think not.
We must not lose sight of the fact that against the background of the technical requirement of a date certain there is superimposed the overriding principle that law must be a rule of reason to command respect. It strives to give effect to wills because they represent the wishes and desires of the testator. The law which transgresses the intent of man (provided the intent be a legal one as it is here) ceases to serve and, at the same time, guide man and in its cessation becomes not law but oppression. This is not to say that rules should not exist which limit the introduction of evidence in a given situation. By the universal application of certain principles of evidence, some rules are necessary to prevent the breakdown of basic proofs whose disintegration would result in complete chaos and gross injustice. However, no such threat is posed here. It has not been shown that an application of this rule to permit the offering of extrinsic evidence to determine the certainty of a date of a testament would result in an injustice here or even that it would open the gates to injustices in other situations envisioned within the application of this principle. However, we can foresee, beginning with an adverse decision in this case, how a rejection of the rule would frustrate the wishes of testators yet unborn. The Supreme Court has given conciseness and native logic to this basic principle that the law favors the validity of will:
“To wrest a man’s property from the person to whom he has given it, and divert it to others to whom he has desired to withhold it, is a most violent injustice amounting to nothing less than postmortem robbery, which no Court should sanction unless thoroughly satisfied that the testator was legally incapable of making a will.” Kingsbury v. Whitaker, 32 La.Ann. 1055, 1062; McCarty v. Trichel, 217 La. 444, 46 So.2d 621, 624.”
Accordingly, we reaffirm our decision in the Succession of Gaudin, 98 So.2d 711, and hold that extrinsic evidence may be properly admitted to prove the certainty of the date of an olographic will.
Having resolved the principal issue of admissibility of evidence aliunde the will, we must next consider whether or not the evidence admitted in the trial court establishes this date with certainty. We find that it does.
In support of his contention that the date was September 12, 1955, counsel for proponent introduced in evidence certain checks written during the months of September and December, 1955, the dates thereon being in “slash” date figures showing the month, day and year in that sequence and shown to have been cashed at the bank in that period. It is most significant that one of these checks was dated “9/12/55” and on the back the bank’s stamp shows it was deposited on September 13, 1955. There was also offered a slip of paper in the testator’s own handwriting and kept by him in his pocketbook which slip referred to dates during and subsequent to World War II including an entry around the time of the Korean conflict. These figures aro *392 given in “slash” dates and in the sequence of month, day and year. Opponent offered no evidence and the trial court concluded that the date of the will was September 12, 1955, and ordered it probated.
In oral argument before this court counsel referred to the fact that military regulations require the date of instruments be given in day, month and year in that sequence. Counsel is quite correct in this observation although if this date had been given in accordance with military custom it would have been shown “12 Sep 55”. This court knows of no custom in the military service authorizing “slash” dates. Moreover it is obvious from this slip of paper that the testator did not employ the day, month and year method, inasmuch as three of the seven dates were “8/13/45, 8/14/45, 8/15/45”, and the others showed the month and day at twelve or below this figure. Thus it is obvious that the testator did not employ the day, month and year sequence even on these- so-called military dates but rather employed the month, day and year sequence ordinarily used in civilian affairs.
We find that this evidence preponderates in favor of the testator’s employing the common method in the sequence of month, day and year. Consequently we find that this establishes the date of this will with certainty, which date we find to be September 12, 1955.
For the reasons assigned the judgment of the lower court is affirmed.
Affirmed.